IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| JARED GAUMER, | ) |
|     Plaintiff, | ) ) ) ) Case No. |
| v. | ) ) |
| NORTHROP GRUMMAN CORPORATION, | ) ) ) |
|     Defendant. | ) ) |

## COMPLAINT

Plaintiff, Jared Gaumer ("Gaumer"), by and through his attorneys, Lopp Mathias Law, brings a complaint against Northrop Grumman Corporation ("Northrop" or "Defendant") for discrimination and retaliation and states as follows:

## NATURE OF THE CASE

1. This is a two-count complaint alleging discrimination on the basis of disability and retaliation for opposition the discrimination, in violation of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq and Title IV of the Civil Rights Act of 1964.

## PARTIES

2. Gaumer is a resident of Naperville, Illinois in Will County. At all times material to this action, Plaintiff was an individual with a disability under the Americans with Disabilities Act ("ADA").

3. Defendant Northrop Grumman Corporation is a corporation doing business in

Illinois and is an employer within the meaning of 42 U.S.C. § 12111(5)(A).

## JURISDICTION AND VENUE

4. Jurisdiction is conveyed upon this Court by virtue of 28 USC § 1331 as this claim arises under the laws of the United States of America.

5. Venue is proper pursuant to 28 USC § 1391 as the unlawful employment practices alleged herein occurred [in Rolling Meadows] in Cook County, Illinois, which is within this Court's division of the U.S. District Court, Eastern District of Illinois.

## PROCEDURAL HISTORY

6. Gaumer has filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC dated September 15, 2021. *Attached as **Exhibit A**.*

7. All conditions precedent to filling suit under the ADA have been complied with.

## FACTUAL ALLEGATIONS

8. Gaumer began working for Northrop in July 2019.

9. As a process engineer, Gaumer oversaw equipment and operators during the second shift at Northrop's Rolling Meadows location. He supported seven second shift operators and seven semi-automatic machines, as well as several manual stations.

10. In May 2020, Gaumer was tasked with developing a MRSI Myocronic machine program ("MRSI") with the goal of building a specific circuitry pattern for a new product ("the Project").

11. Gaumer was on track to finish the Project until he was forced by his disability to take a medical leave from June 3, 2020 to August 3, 2020.

12. Beginning on July 15, 2020, his medical leave was protected under the Family and Medical Leave Act ("FMLA").

13. While on medical leave, Gaumer was not able to work on the Project because of Northrop's medical leave policy that employees are not allowed to perform any work, including communicating about work, while on leave.

14. Gaumer was not able to coordinate with his coworker who was tasked with the Project in Gaumer's absence. This coworker was Gaumer's trainer.

15. The Project was delayed for several weeks during Gaumer's leave.

16. In August 2020, immediately after Gaumer returned from medical leave, Defendant retaliated against Gaumer by:

    a) giving Gaumer a negative performance review for failure to complete the Project; and

    b) instituting a task tracking document for the Project.

17. The performance review states that "tasks were not completed sufficiently and resulted in significant rework and program delays." *Attached as **Exhibit B***.

18. Gaumer made an initial complaint about this retaliation to Northrop's Human Resources department ("HR") on August 20, 2020.

19. Gaumer made a formal complaint of disability discrimination on October 12, 2020.

20. On November 20, 2020, Gaumer received a letter from Defendant notifying him that he was terminated, effective December 4, 2020. *Attached as **Exhibit C***.

21. Less than 30 employees were laid off out of the approximately 5,000 employees at the Rolling Meadows facility where Gaumer worked.

22. The reason given was "cost reduction" despite Northrop earning record profits with third quarter sales of 2020 increasing 7 percent to $9.1 billion.

23. Northrop chose which employees to terminate after Gaumer took his medical leave.

24. Gaumer had more experience and education than a newly hired process engineer, who was not chosen for termination.

25. During the entire period of his employment under Defendant, Gaumer has performed outstanding service for Northrop as evidence by:

   a) his strong performance reviews prior to August 2020;

   b) his presentation on "Measurement Uncertainty in Digital Microscope Imaging Systems" for which he received a certificate of appreciation; *Attached as **Exhibit D***.

   c) his award for "Good Engineering" received on July 24, 2020. *Attached as **Exhibit E***; and

   d) correspondence after his termination including a letter thanking Gaumer for his good work for the company, sent on November 23, 2020. *Attached as **Exhibit F.***

26. Gaumer received the "Good Engineering" for his work on the Project. He created a more efficient program using a Python script which generated XML files used by the MRSI machine. Developing this program required extensive knowledge of the MRSI machine and demonstrates Gaumer's proficiency.

27. Gaumer also received a notification that he was entered into the "Honor Roll of Inventors" for this program, which was postmarked on December 26, 2020. *Attached as* **_Exhibit G_**.

28. Gaumer was highly competent with the Project despite never receiving formal training. Defendant denied him the opportunity to receive formal training from the manufacturer, choosing to have a coworker train him.

29. Gaumer performed at or above the level of his non-disabled coworkers prior to his termination.

## COUNT I - DISABILITY DISCRIMINATION

30. Plaintiff repeats and reasserts the allegations of Paragraphs 1-30.

31. Northrop is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5)(A). Northrop is engaged in an industry affecting commerce with approximately 5,000 employees employed at the Rolling Meadows facility.

32. Gaumer has been an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2)(B). Gaumer suffers from Crohn's disease, which affects his major bodily functions.

33. Gaumer's physical impairment was disclosed to Northrop, and Northrop

regards Gaumer as having a disability.

34. At the time Gaumer was terminated from Northrop's employ, Gaumer was capable of performing all of his duties.

35. Northrop's termination of Gaumer for taking a medical leave was a discriminatory action prohibited by the ADA, 42 U.S.C. § 12112(a).

36. As a result of Defendant's discriminatory conduct, Gaumer has suffered injury to his career, as well as emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, and other non-pecuniary losses for which he is entitled to compensatory damages pursuant to 42 U.S.C. § 1981a.

## COUNT II - RETALIATION

37. Plaintiff repeats and reasserts the allegations of Paragraphs 1-37.

38. Gaumer's complaint of employment discrimination to Defendant was a protected activity under federal law.

39. Gaumer opposed the negative performance review and task tracking document, which he had a good faith belief was retaliation for taking a medical leave. He made the opposition known to Defendant by contacting HR with his concerns.

40. Northrop terminated Gaumer in retaliation for engaging in protected activity under federal law, as evidence by the suspicious timing of Gaumer's official complaint of disability discrimination and the notification of Gaumer's termination. Further, Northrop did not terminate a similarly situated employee with less experience than Gaumer.

41. Northrop's justification for terminating Gaumer does not match Gaumer's

employment record prior to him taking a medical leave, nor does it fit with the awards and recognition of Gaumer's work.

42. Defendant's retaliation is therefore actionable under federal law.

43. Defendant acted willfully with reckless disregard for Gaumer's civil rights.

WHEREFORE, Plaintiff, Jared Gaumer prays for the following relief:

A. An Order for Defendant to reinstate Gaumer to his former position, and to reimburse Gaumer for all lost salary and benefits he would have earned but for Defendant's conduct;

B. An Order awarding back pay, lost benefits, and interest;

C. An Order awarding Gaumer all compensatory and punitive damages to which he is entitled;

D. An Order granting attorneys' fees and costs; and

E. For such other and further relief as is just and equitable.

Respectfully submitted,

Jared Gaumer

By: /s/ *Megan Lopp Mathias*
One of his Attorneys

Megan Lopp Mathias (#6280497)
LOPP MATHIAS LAW
1030 W. Chicago, Avenue
Chicago, IL 60642
(312) 882-5458
megan@loppmathiaslaw.com